FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

2022 AUG 22 PM 4: 03

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                DEPUTY

| | |
|---|---|
| JUAN ANTONIO GONZALEZ, § | |
| TDCJ No. 01962698, § | |
|     Petitioner, § | |
| § | |
| v. § | EP-22-CV-165-DCG |
| § | |
| BOBBY LUMPKIN, § | |
| Director, Texas Department of § | |
| Criminal Justice, Correctional § | |
| Institutions Division, § | |
|     Respondent. § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Juan Antonio Gonzalez challenges Respondent Bobby Lumpkin's custody of him through a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Pet'r's Pet, ECF No. 1. His petition is opposed by Lumpkin as both conclusory and meritless. Resp't's Resp., ECF No. 16 at 1. His petition is denied for the following reasons.

### BACKGROUND AND PROCEDURAL HISTORY

Gonzalez is a 27-year-old state prisoner serving a 50-year sentence for murder. J. of Conviction, ECF No. 11-11 at 94–95. His projected release date is October 4, 2062. *See* Texas Dep't of Crim. J., Inmate Information Search, https://inmate.tdcj.texas.gov/InmateSearch /search.action (last visited August 15, 2022).

On September 25, 2012, a 17-year-old Gonzalez and two friends—Juan Gomez and Alan Medrano—were walking home from school. *Gonzalez v. State*, No. 08-14-00293-CR, 2019 WL 1553583, at *1 (Tex. App.—El Paso Apr. 10, 2019, pet. ref'd). As they moved along a busy El Paso street, Gomez "keyed" several parked cars—including one owned by off-duty police officer Jonathan Molina. *Id.*

Molina—who was not in uniform—emerged from his house and confronted the three teenagers. *Id.* His encounter escalated into a fight. *Id.* He was shoved to the ground by Gonzalez. *Gonzalez v. State*,

No. PD-0983-19, 2020 WL 1697369, at *1 (Tex. Crim. App. Apr. 8, 2020) (Walker, J., dissenting). As he fell, he struck his head on the irregular surface of the sidewalk which jutted up "like a teepee." *Id.* He sustained a fatal brain injury during the fall. *Id.* After he hit the ground, he was punched in the face two or three times by Gonzalez. *Id.*

Gonzalez was charged with the capital murder of a police officer. *Gonzalez v. State*, 544 S.W.3d 363, 364 (Tex. Crim. App. 2018). He was found guilty of the lesser charge of murder. *Id.* His conviction was affirmed by the Eighth Court of Appeals. *Gonzalez*, 2019 WL 1553583. His petition for discretionary review was refused. *Gonzalez*, 2020 WL 1697369.

Gonzalez filed a state application for a writ of habeas corpus. Pet'r's Pet., ECF No. 1 at 3. He asserted, among other things, "that trial counsel were ineffective because they failed to timely investigate and obtain evidence." *Ex parte Gonzalez*, No. WR-92,974-01, 2021 WL 4186477, at *1 (Tex. Crim. App. Sept. 15, 2021). He also claimed his counsel "failed to present all mitigating evidence during the punishment phase of trial." *Id.* His petition was denied "without written order on findings of trial court without hearing and on the Court's independent review of the record." Action Taken, ECF No. 14-18.

In his federal petition, Gonzalez again asserts his counsel provided constitutionally ineffective assistance by (1) delaying the investigation of his case and (2) failing to present all available mitigating evidence. *Id.* at 5. He asks the Court to reverse the judgment and order a new trial or, in the alternative, order a new sentencing hearing. *Id.*

## APPLICABLE LAW

The writ of habeas corpus is "an extraordinary remedy" reserved for those petitioners whom "society has grievously wronged." *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993). It "is designed to guard against extreme malfunctions in the state criminal justice system." *Id.* (citing *Jackson v. Virginia*,

443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). It is granted by a federal court pursuant to 28 U.S.C. § 2254 only where a state prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Preiser v. Rodriguez*, 411 U.S. 475, 484–87 (1973). It is not granted to correct errors of state constitutional, statutory, or procedural law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Consequently, "federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). They may grant § 2254 relief only when a petitioner successfully raises a federal issue. *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). And they must find (1) the state court adjudicated the federal issue contrary to clearly established federal law as determined by the Supreme Court, or (2) the state court's decision was based on an unreasonable determination of the facts considering the record. *Harrington v. Richter*, 562 U.S. 86, 100–01 (2011). They must defer to state court decisions on the merits. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). They must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Ford v. Davis*, 910 F.3d 232, 234 (5th Cir. 2018) ("a state court's factual findings are presumed to be correct, and the applicant bears the burden of rebutting that presumption by clear and convincing evidence."). Finally, they must accept state court decisions on procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

## ANALYSIS

Gonzalez claims his counsel, Ruben Morales, provided constitutionally ineffective assistance when he (1) delayed investigating his case and (2) failed to present mitigating evidence. Pet'r's Pet. ECF

3

No. 1 at 5. Specifically, he maintains his counsel deferred looking into his case for nearly two years and failed to call available mitigation witnesses to testify in his behalf:

> Defense counsel retained 10-9-12 but did not use investigator until 7-1-14. Defense character witness were: (1) teachers at Petitioner's dropout school who saw him only 90 minutes per day; and (2) grandfather. During punishment, only defense witness was grandmother. No punishment evidence about Petitioner's troubled childhood from not having a mother in his life, bullied in school about this, he was desperate for a mother's love, he volunteered with elderly people, he attended church regularly, he was confirmed in the church. Witnesses were available to testify about this evidence, but defense counsel failed to develop this evidence during punishment.

*Id.*

A petitioner's ineffective-assistance-of-counsel claim is analyzed under the two-pronged test in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, a petitioner must demonstrate (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 689–94. To establish deficient performance, he must present evidence that his counsel's assistance fell " 'below an objective standard of reasonableness.' " *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If a petitioner fails to prove one prong, the reviewing court need not analyze the other. *See Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

In addition to applying the *Strickland* two-prong test, a federal habeas court must also review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). It must consider not only whether the state

court's decision was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *see also Harrington*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.").

A state court's "decision" in a habeas proceeding is the "last reasoned opinion." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 526 U.S. at 98. Moreover, a state court's factual findings are "presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Reed v. Stephens*, 739 F.3d 753, 773 n.8 (5th Cir. 2014) (declining petitioner's suggestion that the Court not apply section 2254(e)(1)'s presumption of correctness to the Court of Criminal Appeals' review of his actual innocence claim under *Schlup v. Delo*, 53 U.S. 298 (1995)); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (explaining the presumption of correctness also applies to "those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Finally, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

The state trial court—after conducting a hearing on Gonzalez's state writ application—made the following factual findings regarding his claim that his counsel delayed hiring an investigator and deferred investigating this case:

104. The habeas record does not affirmatively demonstrate that trial counsel did not timely obtain the assistance of an investigator.

   * * * *

106. The habeas record reflects that trial counsel conducted an extensive, thorough, and timely pretrial investigation for purposes of both the guilt-innocence and punishment stages of trial.

107. This Court finds credible . . . Morales's testimony at the December 14, 2021, writ evidentiary hearing that:

    a. before he . . . began representing the applicant, the applicant's prior counsel had already retained the services of an investigator, namely, Xavier Lucero (hereinafter "Lucero");

    b. at that time, Lucero, who had already started his investigation by "canvassing" the scene and surrounding neighborhood, shared with . . . Morales information regarding possible witnesses and the condition of the crime scene, as well as his impressions as an investigator; and

    c. while he . . . could not remember a set time frame, he recalled that Lucero remained on the case for some time, although . . . Morales consulted more with Vince Gonzalez (hereinafter "Vince"), a mitigation specialist/investigator for the defense, as the case progressed. . . .

108. This Court finds credible Judge Morales's testimony that he had already started his investigation of the applicant's case in 2012, which investigation continued for the duration of the case and was conducted by . . . Morales individually and by his team of investigators (Lucero, Vince, and Gustavo Monroy (hereinafter "Monroy"), who was hired later in the case). . . .

109. This Court finds credible . . . Morales's testimony that as part of his investigation, he studied the State's case file "backwards and forwards."    . . .

110. Although he could not remember the precise details, . . . Morales also recalled reviewing transcripts of testimony by Medrano and possibly Gomez.

   * * * *

146. The record does not affirmatively demonstrate that trial counsel performed deficiently by not timely obtaining the assistance of an investigator, particularly where the record reflects that the applicant had at least one investigator at the outset

>   of . . . Morales's representation and ultimately received the assistance of a team of investigators.
>
>   * * * *
>
>   148.   The applicant has failed to show that any of the many investigators and experts he had on his case had insufficient time to investigate.
>
>   149.   The applicant has failed to show how any additional investigation would have benefitted his case.
>
>   150.   The record does not affirmatively demonstrate that the applicant suffered prejudice as a result of any deficient performance by trial counsel.
>
>   151.   This Court finds no reasonable probability that the outcome of the guilt-innocence or punishment phases of the applicant's trial would have been different had the jury been presented with the evidence that the applicant asserts should have been investigated.

State Habeas R. (Findings of Fact), ECF No. 15-12 at 7–8, 14–15 (citations omitted).

The state trial court also entered the following factual findings concerning Gonzalez claim that his trial counsel failed to present mitigating evidence:

>   184.   The record does not affirmatively demonstrate that trial counsel rendered deficient performance by not presenting the complained-of mitigation evidence.
>
>   * * * *
>
>   205.   This Court finds credible . . . Morales's testimony at the writ hearing regarding his investigation of potential mitigation evidence.
>
>   206.   This Court finds credible . . . Morales's testimony that he interviewed the applicant's family members and discussed at length their potential testimony.
>
>   * * * *
>
>   225.   This Court finds, based on . . . Morales's credible testimony, that he made informed decisions, grounded in reasonable and legitimate trial strategy, with respect to each complained-of mitigation witness.

7

226. This Court finds that . . . Morales's strategy of only presenting evidence that did not portray the applicant as a troubled person with a temper problem was objectively reasonable, particularly given the applicant's defensive strategy that he was just a regular kid walking home from school who, acting in self-defense, did nothing wrong.

* * * *

230. The record does not affirmatively demonstrate that trial counsel performed deficiently by not presenting the complained-of mitigation evidence.

* * * *

237. This Court finds no reasonable probability the jury's verdict would have been different had the jury heard evidence that the applicant did not have a perfect family, when he had one that was far better than most.

238. The record does not affirmatively demonstrate that the applicant suffered prejudice as a result of any deficient performance by trial counsel in this regard.

*Id.* at 20, 23, 26, 27, 28.

The Court accepts the state trial court's findings and conclusions as the last reasoned opinion of the state courts since the Texas Court of Criminal Appeals accepted them without a written order when it denied Gonzalez's state writ application. Action Taken, ECF No. 14-18. The Court observes that Gonzalez provides no evidence to show his counsel's assistance fell below an objective standard of reasonableness or that, but for his counsel's unprofessional errors, the result of the proceedings would have been different. Indeed, the Court notes that his petition rests entirely on a short paragraph of allegations unsupported by any evidence or citations to the record. Pet'r's Pet. ECF No. 1 at 5; *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (noting that a petition that presents "conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). The Court accordingly finds that Gonzalez provides no clear and convincing evidence to rebut the state court's findings on his state writ application that his counsel provided constitutionally effective assistance.

Consequently, Gonzalez also cannot show (1) the state court adjudicated a federal issue contrary to clearly established federal law as determined by the Supreme Court, or (2) the state court's decision was based on an unreasonable determination of the facts considering the record. *Harrington*, 562 U.S. at 100–01. Therefore, Gonzalez is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the petitioner must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Reasonable jurists could not debate the Court's reasoning for denying Gonzalez's claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). The Court will not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Gonzalez's claims are without merit, and he is not entitled to federal habeas relief. The Court further concludes that Gonzalez is not entitled to a certificate of appealability.

The Court, therefore, enters the following orders:

**IT IS ORDERED** that Gonzalez's "Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (ECF No. 1) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Gonzalez is **DENIED** a certificate of appealability.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this _____18th_____ day of August 2022.

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**